**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

**UNITED STATES OF AMERICA,**

      **Plaintiff,**        **CRIMINAL ACTION NO. 14-CR-20296**

**vs.**

                         **DISTRICT JUDGE ROBERT H. CLELAND**

                         **MAGISTRATE JUDGE MONA K. MAJZOUB**

**RONALD PRUITT,**

      **Defendant.**
_____/

**REPORT AND RECOMMENDATION**

Defendant is charged in a five-count indictment with (1) Possession with Intent to Distribute Heroin in violation of 21 U.S.C. §841(a)(1); (2) Possession with Intent to Distribute Cocaine in violation of 21 U.S.C. §841(a)(1); (3) Possession of a Firearm in Relation to a Drug Trafficking Crime in violation of 18 U.S.C. §924(c); (4) Maintaining Drug Involved Premises in violation of 21 U.S.C. §856(a)(1); and (5) Felon in Possession of a Firearm in violation of 18 U.S.C. § 922(g)(1). (Docket no. 13.)  Before the Court are Defendant's Motion to Suppress Statement (docket no. 18) and Defendant's Motion for *Franks* Hearing and to Suppress Evidence (docket no. 19).  The Government filed an Omnibus Response to Defendant's Motions.  (Docket no. 24.)  The Court referred the matter to the undersigned for purposes of an evidentiary hearing to issue this Report and Recommendation.  (Docket no. 20.)  The Court held an evidentiary hearing on August 20, 2014, and

issues this Report and Recommendation in accordance with Eastern District of Michigan Local Rule 72.1 and 28 U.S.C. § 636(b)(1)(B).[1]

## I. RECOMMENDATION

The Court recommends that Defendant's Motion to Suppress Statement [18] and Motion for *Franks* Hearing and to Suppress Evidence [19] be DENIED.

## II. REPORT

### A. Factual Background

On April 24, 2014, Task Force Agent Jason Kment presented a search warrant application to 28th District Court Judge James Kandrevas. A copy of the Agent Kment's affidavit, the veracity of which Defendant challenges in his Motion for *Franks* Hearing, is attached to Defendant's Response to Plaintiff's Motion. (Docket no. 24-2.) On April 25, 2014, Special Agent Scott Smith and various other Task Force Agents executed the search warrant and found Defendant; 145 gross grams of heroin on a stairwell leading to the upstairs of the residence; 195 gross grams of heroin behind drywall in the master bedroom; 475 gross grams of heroin in a kitchen cabinet; 65 gross grams of cocaine in the same kitchen cabinet; a loaded .40 caliber Springfield handgun; a loaded .44 caliber Desert Eagle handgun; a 9mm Smith & Wesson handgun; a ballistics vest; a box of .44 caliber ammunition; approximately $10,000 in United States currency; assorted .44 and .40 caliber

---

[1]Near the conclusion of the hearing, Defense counsel indicated that he would like to research an issue related to whether SA Smith and TFO Anderson were required to re-Mirandize Defendant when they questioned him at the DEA offices later in the day on April 25, 2014. Defense counsel further indicated that he would inform the Court by telephone no later than 12:00 p.m. on August 21, 2014, if he desired to submit supplemental briefing regarding this issue. Defense Counsel failed to notify the Court by noon on 8/21/2014 that he intends to file a supplemental brief, and therefore, the Court will proceed with the arguments as raised in Defendant's initial Motion.

ammunition; 2 digital scales, one encrusted with a powdery white residue; and a metal kilo press. (*See* docket no. 24-3 (Search Warrant Return and Tabulation).) Defendant was detained during the execution of the warrant.

Following the seizure, Defendant acknowledges that he "made some incriminating statements concerning the controlled substances and firearms that were seized," but he contends that he was not properly Mirandized before he was questioned while under arrest at his home. (Docket no. 18 at 7-8.) The Government asserts that SA Smith read Defendant his *Miranda* rights from a pre-printed DEA form, which the Government further asserts was witnessed by Task Force Officer Jay Anderson. (Docket no. 24 at 8.) The Government also states that when Defendant was being processed at the DEA's offices, "he expressed a desire to speak further with SA Smith and TFO Anderson," at which time he made further incriminating statements and gave officers written consent to search three mobile phones recovered from the residence. (*Id.* at 8-9.)

### B.    The Evidentiary Hearing[2]

Present at the August 20, 2014 hearing were AUSA Molly O'Rourke for the Government, Ben Gonek for Defendant, SA Smith, and TFO Anderson. Prior to calling any witnesses, counsel indicated that they would not present any evidence, elicit any testimony, or present any argument with regard to Defendant's Motion for a *Franks* hearing (docket no. 19), and instead, they would rest on their briefs.

With regard to the remaining Motion to Suppress Statement, the Government first called SA Smith, who testified that he had been employed with the DEA since 2005, but he had previously

---

[2]The Court will limit its discussion of the testimony from the evidentiary hearing to that which it finds relevant for purposes of its decision herein.

worked as a police officer and a member of the Secret Service. He indicated that he had been the case agent on over 100 DEA cases and assisted in several hundred cases. He told the Court that he was the case agent on Defendant's case and that the initial investigation began in 2014.

SA Smith testified that he and his team executed the warrant at Defendant's address on April 25, 2014. He stated that his role in the execution of the warrant was to direct the overall events of the day and to conduct the interview of Defendant. He testified that he and his team raided Defendant's home at approximately 6:25 a.m. and that the initial raid took about 20 minutes. He told the Court that by 6:50 a.m., Defendant had been placed under arrest and was handcuffed and sitting at his dining room table.

SA Smith was then asked about his general practice for interviewing suspects following the execution of a warrant. He testified that he typically finds a quiet place for the interview, that he puts his notebook on the table, and that he then takes his yellow *Miranda* card out of his wallet. He stated that he then explains who he is, what the DEA does, why the officers are searching the location, what evidence they have collected that could be detrimental to the suspect, and what benefits the suspect may find in cooperating with the DEA. SA Smith then testified that he places his *Miranda* card on the table in front of the suspect and reads it to him verbatim. A photocopy of SA Smith's *Miranda* card was entered into evidence as Government Exhibit 3. Additionally, during a short voir dire by defense counsel, SA Smith removed his *Miranda* card from his wallet and displayed it.

SA Smith testified that on April 25, 2014, at approximable 6:50 a.m., after securing the premises, he and TFO Anderson sat down with Defendant at his dining room table. He stated that he followed his standard procedure with regard to a suspect interview, and after about 10 minutes

of introductory comments, at 7:00 a.m., he read Defendant his *Miranda* rights verbatim off of his *Miranda* card. He stated that Defendant was seated to his right at a 90 degree angle and that TFO Anderson was seated across from him, to Defendant's right. He further testified that Defendant did not ask for any clarification, that Defendant's body language indicated that he understood what SA Smith was saying, and that Defendant verbally acknowledged that he understood his rights and that he was willing to speak with SA Smith and TFO Anderson.

The Court then admitted Government Exhibit 1, a photocopy of SA Smith's notes from April 25, 2014, which includes at the top of the third page a notation that states, "700 - Miranda Smitty Shaggy." SA Smith testified that his nickname is "Smitty" and that TFO Anderson's nickname is "Shaggy." He indicated that he made this notation so that he could recall when Defendant was read his *Miranda* rights. The Court also admitted Government Exhibit 2, a photograph taken in the living room of Defendant's Residence on April 25, 2014, which shows Defendant and SA Smith sitting in the background at Defendant's dining room table; on the table to SA Smith's left is a black object with a yellow piece of paper sitting on top of it. SA Smith testified that the black object was his wallet and the yellow object was his *Miranda* card; he added that he regularly places the card on his wallet during the interview so that he does not forget to put it back in his wallet when he is done.

On cross examination, SA Smith acknowledged that there were eight to ten agents who participated in the raid on Defendant's residence and that they were all outfitted with specific equipment related to their various tasks. He noted that one of the officers ultimately brought a camera to the scene to take pictures for evidentiary value, but none of the officers brought an audio recorder or a video recorder. He further acknowledged that the DOJ has recently enacted a new policy with regard to recording suspect interviews, but he stated that the policy had not been enacted

as of April 25, 2014, and that the policy only applies to station-house interviews, not field interviews.  Finally, SA Smith acknowledged that he has participated in hundreds of cases, that Defendants regularly recant confessions or allege that they were not read their *Miranda* rights, and that recording the waiver or having the suspect execute a written waiver would be a good way to avoid such claims.  SA Smith also testified that during the interview, when officers recovered a cell phone that they believed belonged to Defendant, they obtained Defendant's consent to search the phone and later had him execute a written consent form.  On redirect, SA Smith clarified that the DEA does not require a written waiver of *Miranda* rights and that securing a signed waiver is not the normal custom and practice.

The Government then called TFO Anderson, who testified that he is employed by the Clinton Township Police Department, but he has been part of the DEA Task Force for three-and-a-half years.  He testified that he was part of the entry team that executed the warrant on Defendant's residence on April 25, 2014.  He further acknowledged that he was with SA Smith when he interviewed Defendant and that he was present for the entire interview.

TFO Anderson testified that the interview began shortly after the residence had been secured and that SA Smith began by pulling his yellow *Miranda* card from his wallet.  He stated that SA Smith placed the card in front of Defendant and read it to him verbatim.  He first stated that SA Smith began by reading Defendant his rights and that there was "nothing else discussed," but he then clarified that this was only after Defendant was first told "who we were."  He further testified that when SA Smith finished reading Defendant his *Miranda* rights, Defendant answered "yes" when asked if he understood his rights and answered "ok" when asked if he would speak with SA Smith and TFO Anderson.  He told the Court that the interview lasted no longer than 20 minutes.

6

### C. Governing Law

#### 1. *Miranda* Warnings

To protect an individual's Fifth Amendment right, *Miranda v. Arizona*, 384 U.S. 436 (1966), requires officers to give warnings, including the right to remain silent, before engaging in "custodial interrogation." *United States v. Panak*, 552 F.3d 462, 465 (6th Cir. 2009). To establish a violation of this right, the defendant must show by a preponderance of the evidence that he was "in custody" and that he was "interrogated" while he was in custody. *Illinois v. Perkins*, 496 U.S. 292, 297 (1990); United States v. Smith, 783 F.2d 648, 650 (6th Cir. 1986). To establish that the defendant waived his rights, the government must make such a showing by a preponderance of the evidence. *Colorado v. Connelly*, 479 U.S. 157, 167 (1986).

#### 2. *Franks* Hearing

To obtain a *Franks* hearing, the defendant must make a "substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included in the affidavit." *United States v. Stewart*, 306 F.3d 295, 304 (6th Cir. 2002). If the allegedly false statement is necessary to the finding of probable cause, a hearing must be held. The defendant must specifically point to the disputed portions of the challenged affidavit and must support these charges with an offer of proof. The defendant should also provide supporting affidavits or explain their absence. *Id.* at 305. If the defendant makes this showing, the court must reconsider the affidavit without the disputed portions and determine whether probable cause still exists. If probable cause does not exist, the court must hold a full evidentiary (*Franks*) hearing to determine whether the affidavit was properly submitted. *Id.* at 304-05.

### D. Analysis

### 1. Defendant's Motion to Suppress Statement [18]

In Defendant's Motion to Suppress, he argues that his statements to SA Smith and TFO Anderson "concerning the controlled substances and firearms that were seized" should be suppressed because the officers elicited the statements without first giving him his *Miranda* warnings. (Docket no. 18 at 5.) Defendant and the Government agree that Defendant was the subject of a custodial interrogation when he made the incriminating statements. Thus, it is axiomatic that Defendant's Motion turns on whether SA Smith did, in fact, give Defendant his *Miranda* warnings.

As noted herein, at the evidentiary hearing, SA Smith and TFO Anderson testified that SA Smith read Defendant his *Miranda* rights. Defendant argues that this never happened and supports this contention by asserting (at the hearing) that (1) SA Smith admitted that defendants regularly challenge whether they were properly read their *Miranda* rights, so it "boggles the mind" that there is no recording or written waiver; (2) SA Smith's testimony that he gave a ten-minute introduction regarding the DEA's purpose at the residence before reading Defendant his rights conflicts with TFO Anderson's testimony that the "first thing" SA Smith did was read Defendant his rights; and (3) it does not make sense that SA Smith would have Defendant sign a consent form to search his cell phone but not execute a written *Miranda* waiver. The undersigned finds Defendant's argument unpersuasive.

As SA Smith testified, regardless of whether securing a written waiver of *Miranda* rights makes sense and would help prove that a defendant did, in fact, waive his rights, the DEA does not require its agents to secure a written waiver or record a verbal waiver. More importantly, the law does not require a written waiver. *See United States v. Miggins*, 302 F.3d 384, 397 (6th Cir. 2002);

*see also United States v. Vaughn*, 496 F.2d 622, 622 (6th Cir. 1974) ("[R]efusal to sign a written waiver, standing alone, does not render inadmissible statements or evidence voluntarily given after full warnings."). To the contrary, the Government does not even need to show that a defendant expressly waived his rights; "indeed, an 'implicit waiver' of the 'right to remain silent' is sufficient to admit the defendant's statement into evidence." *Harderman v. Palmer*, No. 12-15341, 2014 WL 2587648, *6 (E.D. Mich., June 10, 2014) (Zatkoff, J.) (citing *Berghuis v. Thompkins*, 560 U.S. 370, 384 (2010); *North Carolina v. Butler*, 441 U.S. 369, 376 (1979)).

A noted, SA Smith and TFO Anderson both testified that SA Smith read Defendant his rights from the *Miranda* card that SA Smith keeps in his wallet. SA Smith testified that this is the process that he follows every time he interviews a suspect, and Defendant has provided no evidence to suggest that SA Smith and TFO Anderson have misled the Court or committed perjury. To the contrary, the evidence supports the Government's position, as SA Smith's contemporaneous notes indicate that he and TFO Anderson were present at 7:00 a.m. when he read Defendant his *Miranda* rights, and the photograph from the residence shows what appears to be SA Smith's *Miranda* card on the table next to him. Therefore, Defendant's Motion to Suppress (docket no. 18) should be denied.

### 2. Defendant's Motion for a *Franks* Hearing and to Suppress Evidence [19]

In Defendant's Motion for a *Franks* Hearing and to Suppress Evidence, he alleges that Agent Kment's affidavit in support of his warrant application contained five false statements:

a. "Since approximately February 2014, the CS has travelled (sic) to this location on at least 7 separate occasions with three separate people of (*sic)* the purpose of obtaining drugs".

b. "At the end of March 2014, the CS traveled to **** Rutland Street, Detroit, MI 48227, with an unidentified male (UM-1) for the purpose of purchasing cocaine . .

9

> . The following day, the CS traveled to the residence with UM-2 for the purpose of obtaining cocaine. After UM-2 and the CS departed the residence, the CS observed that UM-1 has purchased 2 ¼ ounces of cocaine".
>
> c. "Once, in approximately the end of February 2014, and on three separate occasions in March 2014, the CS traveled to **** Rutland Street, Detroit, MI 48227 with UM-3 for the purpose of obtaining drugs."
>
> d. "Within the last 48 hours, the CS traveled to **** Rutland Street, Detroit MI 48227, with UM-3 for the purpose of obtaining drugs. Although the CS was not able to observe the drugs purchased by UM-3, through conversations with UM-3 after departing the residence, it was clear that UM-3 had obtained drugs." and
>
> e. The CS stated on at least one occasion, the CS had met the distributor in the driveway of **** Rutland Street, Detroit, MI 48227. The CS spoke with the distributor in the driveway and had a discussion regarding heroin.

(Docket no. 19 at 3-4 (quoting Agent Kment's Affidavit).) Defendant argues that these allegedly false statements were made intentionally or with reckless disregard for the truth and that they were material to the issuance of the warrant. (*Id.* at 4.) In support of this contention, the only evidence Defendant provides is his own affidavit indicating that "[f]rom January 2014 until the time I was arrested . . . , I was the only male adult at [the Rutland] location[,] . . . [a]t no time did I engage in any heroin or cocaine transactions from [the Rutland] address[,] . . . [and t]here were never any individuals who acquired cocaine or heroin from me for the time period listed in the search warrant affidavit." (Docket no. 22.)

As the Government argues, however, Defendant's assertion does not challenge Agent Kment's veracity; instead, Defendant is challenging the veracity of Agent Kment's Confidential Source (CS). Such a challenge is insufficient to warrant a *Franks* hearing; that is, the "intentionally or recklessly false statement must be made by the affiant [himself], not the non-governmental informant." *United States v. Rodriguez-Suazo*, 346 F.3d 637, 648 (6th Cir. 2003) (citing *Mays v. City of Dayton*, 134 F.3d 809, 816 (6th Cir. 1998) ("*Franks* recognizes that information an affiant

10

reports may not ultimately be accurate, and is willing to tolerate such a result at that early stage of the process, so long as the affiant believed the accuracy of the statement at the time it was made.")). Nothing in Defendant's affidavit even suggests that Agent Kment knew or had any reason to believe that the CS's statements were false. Thus, even if the Court were to accept as true the statements in Defendant's affidavit, he has still failed to make the "substantial preliminary showing" required under *Franks*. Therefore, the Court should deny Defendant's Motion for a *Franks* hearing and to suppress (docket no. 19).

### III. Conclusion

Because the undersigned finds that the Government has met its burden of proving by a preponderance of the evidence that SA Smith read Defendant his *Miranda* rights and that Defendant waived his rights, Defendant's Motion to Suppress [18] should be DENIED. And because the undersigned finds that Defendant has failed to make a substantial preliminary showing that Agent Kment included in his warrant affidavit a false statement knowingly and intentionally, or with reckless disregard for the truth, Defendant's Motion for a *Franks* Hearing [19] should be DENIED.

### IV. Notice to Parties Regarding Objections

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v.*

*Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n Of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Any objections must be labeled as "Objection #1," "Objection #2," etc. Any objection must recite *precisely* the provision of this Report and Recommendation to which it pertains. Not later than fourteen days after service of an objection, the opposing party must file a concise response proportionate to the objections in length and complexity. The response must specifically address each issue raised in the objections, in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.

Dated: August 21, 2014            s/ Mona K. Majzoub
                                  MONA K. MAJZOUB
                                  UNITED STATES MAGISTRATE JUDGE

## PROOF OF SERVICE

I hereby certify that a copy of this Report and Recommendation was served upon Counsel of Record on this date.

Dated: August 21, 2014            s/ Lisa C. Bartlett
                                  Case Manager